# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-10067

_____

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2024

Lyle W. Cayce
Clerk

Steven M. Monacelli,

*Plaintiff—Appellant*,

*versus*

City of Dallas, Texas; Officer John Doe 1, *individually and in his official capacity as a Dallas Police Department Police Officer*; Officer John Doe 2, *individually and in his official capacity as a Dallas Police Department Police Officer*; Officer John Doe 3, *individually and in his official capacity as a Dallas Police Department Police Officer*; Officer John Doe 4, *individually and in his official capacity as a Dallas Police Department Police Officer*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-2649

_____

Before Wiener, Willett, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Steven Monacelli appeals the Rule 12(b)(6)

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10067

dismissal of his 42 U.S.C. § 1983 claims against Defendant-Appellee the City of Dallas. We AFFIRM the dismissal because Monacelli's complaint does not plausibly allege facially unconstitutional policies, inadequate training or policies, or deliberate indifference on the part of the City.

## I.

Monacelli is a freelance journalist who was on assignment during the June 1, 2020, George Floyd protests in downtown Dallas.[1] That night, Dallas police officers allegedly surrounded the demonstration and deployed chemical irritants and less-than-lethal munitions at demonstrators. Monacelli's leg was struck with one such round, and officers detained him for two and a half hours, despite his donning "PRESS" insignia and his self-identification as a journalist.

Monacelli sued the City under § 1983 for unlawful arrest, excessive force, First Amendment violations, inadequate police training, and failure to adopt policies that would have prevented his injuries.[2] The district court granted the City's Rule 12(b)(6) motion to dismiss after Monacelli twice amended his complaint. Monacelli timely appealed.

_____

[1] We recount the facts as alleged in the complaint, accepting "all well-pleaded facts as true," and viewing "those facts in the light most favorable to" Monacelli. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (internal quotation marks omitted).

[2] Monacelli also named as defendants four "John Doe" officers and asserted a failure-to-discipline claim against the City, all of which the district court dismissed. On appeal, he does not assign error to those decisions, so we need not reach them. *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (explaining that failure to identify error in the basis for district-court judgment "is the same as if he had not appealed that judgment").

2

No. 24-10067

## II.

We review *de novo* a judgment granting a Rule 12(b)(6) motion, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[3] While there is no heightened pleading standard for § 1983 claims against municipalities,[4] Monacelli's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] This means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## III.

Under § 1983, municipalities may be held liable for their own constitutional torts, but they cannot be held vicariously liable for the constitutional torts of their employees. Therefore, the inquiry here is whether the constitutional injuries Monacelli alleges he suffered are "directly attributable" to something the City itself did by way of "official action or imprimatur."[7] Courts employ the three-factor *Monell* test to assess a city's own liability.[8] Under that test, a plaintiff must plausibly plead "(1) an

———————————

[3] *Littell*, 894 F.3d at 622 (internal quotation marks omitted).

[4] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[6] *Id.*

[7] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 & n.17 (5th Cir. 2001). For example, Monacelli alleges his detention as a member of the press violated an express policy of the Dallas Police Department. Assuming, but not deciding, his detention was wrongful, culpability would belong to the individual officer who violated the policy, not to Dallas, whose policy Monacelli alleges would have protected him.

[8] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

No. 24-10067

official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom."[9]

## IV.

Monacelli's primary claim concerns policy liability arising from the Dallas Police Department's General Orders 609.00 (involving "mass arrests") and 902.00 (involving "less-than-lethal"). Monacelli asserts both General Orders were facially unconstitutional as written in 2020, allegations which, if properly pleaded, would satisfy *Monell*'s third factor.[10]

This Court considered General Order 609.00 in a *Monell* case arising from the events at issue here and held that General Order 609.00 was not facially unconstitutional.[11] Monacelli fails to distinguish *Verastique v. City of Dallas*, and we find no reason in the record to do so.

Monacelli's claim as to General Order 902.00 yields the same result. *Verastique* instructs that a policy is not facially unconstitutional unless it "affirmatively allows or compels unconstitutional conduct."[12] What's more, "a written policy cannot be facially unconstitutional solely due to instructions that it leaves out."[13] Monacelli does not allege that General Order 902.00 *compelled* unconstitutional conduct but, rather, that it left something out—namely, a prohibition on "firing or deploying direct contact

---

[9] *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks omitted).

[10] *Edwards v. City of Balch Springs*, 70 F.4th 302, 308 (5th Cir. 2023).

[11] *Verastique v. City of Dallas*, 106 F.4th 427, 435 (5th Cir. 2024).

[12] *Id.* at 435 (internal quotation marks omitted).

[13] *Edwards*, 70 F.4th at 309.

hits into a crowd of protesters." These allegations do not plausibly plead that General Order 902.00 was facially unconstitutional.

## V.

We turn next to Monacelli's failure-to-train and failure-to-enact claims. Plaintiffs bringing *Monell* failure-to-train claims must plausibly allege "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy."[14] Monacelli's complaint fails as to each.

Regarding the first and second factors, "[d]efects in a particular training program must be specifically alleged."[15] And the "inadequacy of training must be closely related to the injury."[16] Monacelli invokes a Dallas Police Department report on lessons learned during the George Floyd protests to identify areas where training or communication could improve going forward. The report does identify some areas where gaps existed in the training of Dallas Police Department officers. But even if Monacelli can show these inadequacies are closely related to his injuries, he cannot show deliberate indifference. "Deliberate indifference is a stringent standard," more than mere negligence or, even, gross negligence.[17] There are two ways

---

[14] *Valle*, 613 F.3d at 544.

[15] *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017).

[16] *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

[17] *Valle*, 613 F.3d at 547 (internal quotation marks omitted).

No. 24-10067

to show deliberate indifference:[18] first, plausible allegations of a pattern[19] and, second, the "single-incident exception,"[20] which we've described as "extremely narrow."[21]

Monacelli relies on the single-incident exception to plead deliberate indifference here. But "our caselaw has 'generally reserved' the single-incident method of proving deliberate indifference for cases in which the policymaker provides '*no training whatsoever*' with respect to the relevant constitutional duty, as opposed to training that is inadequate only as to the particular conduct that gave rise to the plaintiff's injury."[22]

Monacelli's complaint does not allege an utter absence of law-enforcement training with respect to the relevant constitutional duty he alleges caused his injuries. Rather, it concedes *some* law-enforcement training, a point reiterated in the Dallas Police Department's lessons-learned report on which he bases much of his claims.[23] The complaint thus fails to plausibly allege a single-incident exception under our caselaw.

---

[18] *Littell*, 894 F.3d at 624.

[19] *Id.* (providing, by way of example, that "municipal employees will violate constitutional rights so often that the factfinder can infer from the pattern of violations that the need for further training must have been plainly obvious" to policymakers).

[20] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997) (explaining that where "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, [can] trigger municipal liability").

[21] *Valle*, 613 F.3d at 549.

[22] *Littell*, 894 F.3d at 625 n.5 (cleaned up, emphasis added). This is because "virtually every plaintiff alleging municipal liability can propose *some* training reform that would have prevented the particular injury-causing conduct[.]" *Id.* (cleaned up).

[23] Both sides urge the Court to consider the Dallas Police Department's lessons-learned assessment, which we are permitted to do. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (noting that on a Rule 12(b)(6) motion, the court may

No. 24-10067

Monacelli's failure-to-enact claim fails for the same reason.[24] The complaint does not plausibly allege either a pattern of violations or the absence of policy under the single-incident exception.

## VI.

Based on the foregoing, Monacelli's operative complaint does not plausibly allege a facially unconstitutional policy or deliberate indifference sufficient to sustain a failure-to-train or failure-to-adopt claim. Accordingly, the district court's judgment is AFFIRMED.

---

consider the pleadings, any attachments to them, and any documents attached to the motion that the pleadings refer to and are central to the claims made).

[24] *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 90 (2023); *Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) ("Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat superior* liability." (internal quotation marks omitted)).

No. 24-10067

Jacques L. Wiener, Jr., *Circuit Judge*, concurring:

I concur in the majority's analysis and in the judgment, and I write separately to address an issue on appeal that the majority does not discuss. Monacelli's first issue on appeal is whether the district court properly rejected his contention that the Dallas city council had delegated policymaking authority to the Dallas Police Chief. Both parties spend a considerable amount of briefing on this issue and I write separately only to acknowledge and dispense with this issue.

Monacelli rests his *Monell* claims on the theory that the Dallas Police Department (DPD) General Orders issued by the Police Chief are official policies by a policymaker. Unfortunately for Monacelli, this contention is foreclosed in this circuit, and it is settled law that the Dallas city council is the policymaking authority at issue. *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016 ("[U]nder Texas law, the final policymaker for the city of Dallas is the Dallas city council."); *see also Longoria ex rel M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("A municipality can be held liable [under § 1983] only when it delegates policymaking authority, not when it delegates decisionmaking authority.") (emphasis in original); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."); *Bolton v. City of Dallas*, 541 F.3d 545, 549-50 (5th Cir. 2008) (citing *Praprotnik*, 485 U.S. at 127 and holding that, although the Dallas city council granted the city manager considerable "final decisionmaking authority in certain employment decisions," this did not amount to delegated policymaking authority).

8

No. 24-10067

I would thus expressly hold that the district court did not err in rejecting Monacelli's delegation theory and his § 1983 claims that rely on this contention fail for this reason alone.